## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**GUIDEONE MUTUAL INSURANCE COMPANY**
**and GUIDEONE AMERICA INSURANCE**
**COMPANY**            **PLAINTIFFS/COUNTER-DEFENDANTS**

**VERSUS**            **CIVIL ACTION NO. 1:06CV218-SA-JAD**

**KENNETH ROCK and JANET ROCK**      **DEFENDANTS/COUNTER-PLAINTIFFS**

---

### GUIDEONE'S RESPONSE TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

---

GuideOne Mutual Insurance Company and GuideOne America Insurance Company

("GuideOne") submit this response to the Motion for Summary Judgment and Memorandum Brief

in Support of the Motion for Summary Judgment filed by Defendants Kenneth and Janet Rock

(collectively the "Rocks").

### I. INTRODUCTION

On August 27, 2005, the Rocks' home located at 328 County Road 1451, Saltillo,

Mississippi, burned, resulting in the total destruction of their home and two automobiles located in

the garage of the home at the time of the fire. The fire was initially reported by Jason and Mary

Brooks, the Rocks next door neighbors.[1] The Rocks were not present in their home at the time of

the fire, having allegedly decided to make an unplanned trip to Philadelphia, Mississippi and take

---

[1] The citations for the summary of facts found in the Introduction were previously included in GuideOne's Motion for Summary Judgment [Doc. 168], filed on April 21, 2009, and the documents cited herein were made exhibits to that Motion or were previously filed with this Court. Therefore, in an effort to keep GuideOne's Response to a minimum, GuideOne is only including exhibits which directly relate to issues raised in the Rocks' Motion for Summary Judgment and Memorandum Brief in Support of the same and are therefore directly relevant to the GuideOne's response.

their two youngest children, Lauren and Kenny, Jr., to the Geyser Falls Waterpark.

On the day of the fire, the Rocks called their agent, Tina Bailey, to report the fire. GuideOne then began the claims adjustment process. Charles McAdory ("McAdory") was designated as the adjuster to handle the homeowners' claim and met with the Rocks on August 29, 2007. He subsequently took the recorded statements of Janet and Kenneth Rock on August 31, 2007. Due to the nature of the claim as a total fire loss, the claim was immediately assigned to GuideOne's Special Investigation Unit ("SIU"). On August 30, 2005, GuideOne also retained Rick Eley ("Eley"), an independent Certified Fire Investigator to determine the origin and cause of the Rocks' fire. GuideOne immediately made a good faith effort to investigate the fire. Ultimately, Eley determined the fire to have been incendiary in origin. As Eley conducted and completed his investigation, GuideOne's SIU continued its investigation, much of which was originally conducted by Kathleen Alverio ("Alverio"), Senior Claims Specialist with GuideOne's SIU department. Based on Eley's report and information obtained during Alverio's initial investigation, GuideOne determined that examinations under oath should be taken of the insureds and retained attorney Dan Webb ("Webb") to assist in the process.

Ultimately, GuideOne completed its investigation. For many reasons which came to light during the course of its investigation, GuideOne sent a letter to Kenneth and Janet Rock on July 31, 2006, denying their claims under the homeowners' and automobile policies and rescinding the policies. At all times during the course of the investigation, GuideOne acted in good faith, meticulously conducting its investigation, drawing information from various sources, including the Rocks, and retaining the necessary experts to assist in the investigation. On July 31, 2006, GuideOne filed a complaint for declaratory judgment asking that the Court find coverage did not exist.

Subsequently, the Rocks filed a counterclaim for bad faith denial of claim against GuideOne. Discovery ensued in the matter, ending on April 1, 2009. On April 20, 2009, the Rocks filed their Motion for Summary Judgment ("motion") and Memorandum in Support of Motion for Summary Judgment ("memorandum brief"), asking the Court grant summary judgment, specifically finding that coverage does exist under the GuideOne homeowner's and automobile policies.

## II. ARGUMENT

The Rocks contend that they are entitled to summary judgment as to the existence of coverage based on (1) their cooperation in GuideOne's investigation following the fire; (2) any "misrepresentations" on the application being immaterial to GuideOne's ultimate denial of coverage and rescission of the policy; (3) the lack of proof of arson as the cause of the fire; and (4) the doctrine of estoppel. These contentions are based upon the Rocks' unsuccessful attempt to skew the clearly undisputed facts in the record. In their brief, the Rocks' assessment of individual facts and circumstances, for example that they cooperated in the investigation by providing certain documents and executing an authorization, indicate their belief that GuideOne based its denial and rescission of the policy on separate facts or events without considering the information gathered as a whole. This is not the case, however, as GuideOne's denial was based on the congruent facts and information gathered by it during the course of its investigation following the fire.

Further, as to the issues related to arson, as the Rocks correctly state in their memorandum brief, the law in Mississippi is that arson may be proven circumstantially, and the burden of proof related to the same is clear and convincing evidence. In their spin on the facts, however, the Rocks fail to consider the incredible amount of circumstantial evidence contained in the record. Finally, as to their claim that GuideOne is estopped from rescinding the policy, the Rocks again fail to

consider the facts in the record related to the application process and for which they have offered no credible evidence in dispute. These issues are addressed in detail below.

## A.  GuideOne had abundant valid, good faith reasons for denying the Rocks' claim.

GuideOne had abundant valid, good faith reasons for denying the Rocks' claim. In its letter to the Rocks, dated July 31, 2006, GuideOne outlined these numerous reasons in great detail, pointing to the specific applicable sections of the GuideOne policy. A copy of the denial letter is attached as Exhibit 1. As noted above, GuideOne did not consider any individual fact or event, but rather considered the totality of the facts and circumstances surrounding the fire and the information obtained during the course of its investigation, including the incendiary cause of the fire, the financial difficulties the Rocks were having at the time of the fire, the inconsistencies found in the Rocks' financial information, the Rocks' overall failure to fully and completely cooperate in GuideOne's investigation and material misrepresentations made by the Rocks during the application process.

### 1.  Incendiary Cause

First, in the earliest stages of GuideOne's investigation, it retained the services of Eley to determine the origin and cause of the Rocks' fire.[2] Eley went to the scene of the fire on August 31, 2005, and began his investigation. *See Deposition of Rick Eley* at 33. At that time, he interviewed Kenneth Rock and spoke with Fire Chief Larry Williams to obtain factual information surrounding

---

[2] Eley's investigation, including his forensic investigation of the scene, is discussed in great detail in GuideOne's Motion for Summary Judgment [Doc. 168]. Thus, in the interest of not being redundant, GuideOne is including a copy of Eley's report, attached hereto as Exhibit 2, but will not repeat all the complex details related to Eley's investigation contained in its earlier motion. Further, GuideOne hereby incorporates all facts and arguments contained in its prior Motion for Summary Judgment [Doc. 168] as if fully stated herein.

the fire. *Id.* at 34. Eley learned from Chief Williams that, when the fire department arrived on the scene, the roof had already collapsed, and the fire was burning vigorously. *Id.* at 37. Chief Williams also told Eley that Mike Rock, Kenneth Rock's brother and immediate next door neighbor, never came outside during the fire to see what was going on. *Id.* Eley then conducted his forensic investigation of the Rocks' home. A copy of Eley's Fire Investigation and Origin and Cause Reports is attached as Exhibit 2. Ultimately, Eley reached the following opinion:

> All physical evidence indicates that this fire was incendiary in origin, occurring as the result of someone pouring a flammable and/or combustible substance throughout the home and igniting the same. The fire spread up and away from that point until the entire combustible materials inside the home along with the roof structure was destroyed as a result of this fire.

*See* Exhibit 2. The Rocks do not dispute that the cause of the fire was incendiary in nature.

## 2. Financial Difficulties and Inconsistencies

Second, the undisputed facts in the record indicate that the Rocks were in uncertain and difficult financial times.[3] During the course of its investigation, GuideOne was confronted with facts related to the Rocks' finances which indicated the financial strain the Rocks were under at the time of the fire. Also, GuideOne became aware of numerous inconsistencies related to the Rock's finances and sought to understand those because of the possibility of "arson for profit" motive. Specifically, the Rocks submitted their proof of loss and personal property inventory in which they claimed their contents loss totaled $259,716.00. GuideOne was confronted with the following time line of events, however, inconsistent with that proof of loss:

▸    January 1998 - Kenneth Rock claims to be totally disabled and unable to work.

---

[3] Once again, though undisputed facts most relevant to GuideOne's response to the Rocks' motion are contained herein, complete details of the financial inconsistencies and forensic analysis are contained in GuideOne's Motion for Summary Judgment [Doc. 168].

- July 1998 - Kenneth and Janet Rock file bankruptcy, listing $24,078 in personal property assets, of which $22,000 is a 1998 Z-71 pickup truck. Thus, the Rocks only had $2,000 in other personal property assets.

- September 1998 - Kenneth Rock suffers a heart attack.

- October 1998 - Kenneth Rock begins receiving Social Security Disability payments.

- July 2000 - The Rocks' home burns and is a total loss. The Rocks submit a contents claim in the amount of $108,000. The insurance company pays $100,000 for the dwelling, of which $92,000 went directly to Merchants & Farmers Bank to satisfy loans. The Rocks realized proceeds totaling $80,776.50.

- Fiscal Year 2000 - Janet and Kenneth Rock file their federal 1040, identifying income of $20,742. The Rocks receive a refund of $3,178.

- Fiscal Year 2001 - Janet and Kenneth Rock file their federal 1040, claiming income of $4,479, and receive a refund of $1,961.

- Fiscal Year 2002 - Janet and Kenneth Rock evidently did not file a 2002 tax return.

- Fiscal Year 2003 - Janet and Kenneth Rock file their federal 1040, claiming income of $14,053. They receive a refund of $5,931.

- Fiscal Year 2004 - Janet and Kenneth Rock file their federal 1040, claiming income of $12,966. The Rocks receive a refund of $4,856.

- Fiscal Year 2005 - Janet and Kenneth Rock file their federal 1040, claiming income of $28,785 and a business loss of $5,985. The Rocks receive a refund of $6,064.

Since the numbers provided to GuideOne by the Rocks simply did not add up, GuideOne retained a forensic accountant, Joey Hines ("Hines"), with the firm Tann, Brown & Russ, to assist it in analyzing the Rocks' financial situation at the time of the fire. A copy of Hines' Expert Report is attached as Exhibit 3. Hines analyzed the Rocks' finances, including the Rocks' reported assets and liabilities, their reported incomes, and their delinquent accounts (as provided via Transunion and Choice Point credit reports); Hines also analyzed the Rocks' personal property inventory, in

comparison with the financial information the Rocks provided. Based on his review of the data,

Hines reached the following conclusions:

1.  At the time of the fire, the Rocks had a liquidity problem as their current ratio (current assets divided by current liabilities) totaled .06, meaning that the Rocks had $15.02 in short term debt.

2.  The Rocks' mortgage obligations were beyond the recommended limits, the rule of thumb being that one's monthly mortgage should not exceed 28% of gross monthly income.

3.  The Rocks had $11,000 in delinquent accounts, and such a delinquency is an indicator of serious financial difficulties.

4.  The personal property inventory contained discrepancies. These discrepancies were based on Hines' analysis of the Rocks' proof of claim from the 2005 fire loss compared with the insurance proceeds received form the 2000 fire loss, their known reported income, bank deposit record, loans and loan payments, gifts, and documented living expenses. This left the Rocks with a $375,000 deficit, but their bank statement balances did not reflect the same.

*See* Exhibit 3. Thus, Hines opined, the Rocks substantially overstated either their personal property

purchases and/or their home construction costs. *Id.*

The Rocks simply cannot overcome the clear and undisputed facts in the record which reveal

their financial difficulties or the inconsistencies related to their financial condition. Yet, in their

memorandum brief, the Rocks attempt to do so by arguing that they were in a "substantially better

financial condition" at the time of the 2005 fire loss as opposed to the time at which GuideOne

issued the insurance policy to them. For this argument, the Rocks rely on the fact that, at the time

of the fire, they had reduced their outstanding medical bills, already in collection. In their

memorandum brief, however, the Rocks overlook the fact that documentation related to their

outstanding medical bills indicated there was still a balance of approximately $11,000 in outstanding

medical bills at the time of the fire. The Rocks point to absolutely no facts in the record to explain

Page 7 of 21

Case: 1:06-cv-00218-SA Doc #: 174 Filed: 05/04/09 8 of 21 PageID #: 3919

how, when their sources of reported income were limited to Janet Rock's income from her employment with Dollar General and Kenneth Rock's social security disability, they were able to purchase approximately $259,000 worth of personal property from the time of their fire loss in 2000 through the time of the 2005 fire loss. Their contention that they were in a better financial condition at the time of the fire than at the time the policy was issued certainly does not explain these forensic financial inconsistencies.

### 3. Lack of Cooperation and Providing of Inconsistent Information

The Rocks put a great deal of emphasis on their alleged cooperation with the GuideOne investigation following the fire. The Rocks' so-called cooperation with the GuideOne investigation is based on their execution, on August 29, 2005, of an Authorization to Obtain Information ("AOI") as requested by GuideOne. The Rocks argue that they provided as many of the documents GuideOne requested as they were able to provide, despite having lost their home to fire, and brought those to their examinations under oath. GuideOne does not dispute that the Rocks executed the AOI. However, the Rocks fail to address numerous failures to cooperate and inconsistent statements made by them which impeded GuideOne's ability to accurately investigate the fire loss. By way of example, GuideOne was confronted with the following, indicating lack of cooperation as well as lack of credibility due to so many inconsistencies in the information provided[4]:

▸     Kenneth Rock initially stated he was self-employed, and was engaged in the buying and selling of horse supplies such as saddles, bridles, etc. *Statement of Kenneth Rock* at 2. During Janet Rock's recorded statement, she also told McAdory that her husband bought and sold horse equipment and had been doing so for years. *Recorded Statement of Janet Rock* at 3. She stated that other than her income from Dollar General and Kenneth's income from

---

[4]This is not an exhaustive list of the inconsistencies GuideOne found during the course of their investigation, but rather a small sampling, with the entirety of those inconsistencies being detailed in GuideOne's Motion for Summary Judgment [Doc. 168].

Page 8 of 21

this business, they had no other sources of income. *Id.* Further, she told McAdory that neither she nor her husband received social security disability.

- During her Examination Under Oath, Janet Rock testified that Kenneth's only source of income was his social security disability. *Examination Under Oath of Janet Rock* at 303.

- In his business of buying and selling horse supplies, Kenneth Rock reported to McAdory that he made anywhere from $3,000 to $7,000 per month. *Statement of Kenneth Rock* at 2. During her Examination Under Oath, Janet Rock testified that her husband earned nothing other than his social security income, with her being the spouse earning money from the horse supply business. *Examination Under Oath of Janet Rock* at 303. However, she could not provide any accurate estimate of the monthly income she received from the business. *Id.*

- Other than their mortgage and automobile notes and approximately $700 in credit card debt, the Rocks had no other debt. *Recorded Statement of Kenneth Rock* at 8.

- GuideOne's initial investigation of the Rocks' claim revealed numerous collection accounts. *Deposition of Kathleen Alverio* at 48.

- The Rocks had never filed for bankruptcy. *Recorded Statement of Janet Rock* at 11.

- Kathleen Alverio found a previous bankruptcy filed by the Rocks during the course of her initial investigation. *Deposition of Kathleen Alverio* at 29.

- Janet Rock had never made a worker's compensation claim. *Recorded Statement of Janet Rock* at 11.

- Janet Rock made a prior worker's compensation claim, the Rocks had a prior fire loss and a vehicle theft claim as was revealed during GuideOne's initial investigation. *Deposition of Kathleen Alverio* at 35-37.

The inconsistencies are numerous and go far beyond the sample here. Pursuant to well-established Mississippi law, the Rocks had a duty, not to simply execute the AOI and provide some of the documents requested by GuideOne, but rather to give GuideOne the *best* information available to them and to correct any false answers at the earliest possible date and time. *See Edminston v. Schellenger*, 343 So. 2d 465 (Miss. 1977). Where an insured fails to submit to an examination, refuses to answer material questions, or fails to provide material documents, Mississippi law clearly

provides that the policy is rendered void. *See U.S.F. & G. v. Wiggington*, 964 F.2d 497 (5th Cir. 1992). In their memorandum brief, the Rocks made no attempt to explain why they failed to correct the inconsistencies, such as those noted above, and did not explain their failure to produce additional information which might have assisted GuideOne's investigation. Further, they fail to explain why they failed to fully cooperate in the investigation, for example by deciding to abruptly end Janet Rock's initial Examination Under Oath. In fact, when asked in his deposition why he gave false information to McAdory, the GuideOne adjuster, initially reporting that he made $3,000 to $7,000 per month in his horse supply business (rather than providing the true information that his only source of income was his disability), Kenneth Rock's only explanation is that his finances were "none of his business." *Deposition of Kenneth Rock* at 65.

The fact is that there is no evidence in the record, to which to Rocks can direct the Court, that would explain the financial inconsistencies, demonstrate the Rock's full cooperation in the investigation following the fire, or explain away the Rocks' material and fraudulent misrepresentations to GuideOne. Thus, they simply point a finger back at GuideOne. In their memorandum brief they allege that GuideOne's investigation into their financial condition was not in good faith and that GuideOne did not make a good faith attempt to obtain their financial records. For this proposition, they point to the deposition of Alverio and certain testimony related to GuideOne's obtaining the AOI and financial information by use of the same. The gist of their argument is that it was acceptable for the Rocks to fail to cooperate with the GuideOne's investigation because GuideOne, as an insurance company, was in a better position to obtain the Rocks' financial information and documents than they were. The fact that GuideOne is an insurance company certainly does not override the duties the Rocks owed GuideOne, pursuant to Mississippi

law, to fully and completely cooperate in the investigation following the August 2005 fire.

### 4. Kenneth Rock's Criminal History

During the course of GuideOne's investigation of the Rocks' claim, Kenneth Rock's criminal history came to light; and, through the course of litigation, the extent of his criminal record also surfaced. The issue of Kenneth Rock's criminal record is important to GuideOne's investigation and decision to deny the claim for a couple of reasons. First, based simply on the inconsistencies and lack of cooperation discussed *supra*, there were obvious issues with the Rocks' credibility; and Kenneth Rock's having a criminal record, which he had not previously disclosed, simply bolstered the credibility issues. Second, Kenneth Rock's failure to disclose his criminal history and a prior felony conviction was a material misrepresentation during the application process and yet another basis for the Rocks' denial of the claim and rescission of the policy.[5] In their memorandum brief, the Rocks argue that GuideOne is estopped from denying coverage and rescinding the policy based on Kenneth Rock's criminal record. This argument is addressed in detail below.

Under Mississippi law, insurers have a duty to perform a prompt and adequate investigation, and thereafter make a reasonable, good faith decision regarding coverage based on the results of its investigation. *Broussard v. State Farm Fire and Casualty Co.*, 523 F.3d 618, 627 (5th Cir. 2008). An insurance company has an arguable basis to deny a claim where its decision is supported by credible evidence such that a reasonable insurer would deny the claim. *State Farm Mutual Auto Insurance Co. v. Grimes*, 722 So. 2d 637, 642 (Miss. 1998). An arguable reason is defined as follows:

---

[5]Both of these issues related to Kenneth Rock's criminal record, as well as the details of his criminal record, were discussed in depth in GuideOne's Motion for Summary Judgment [Doc. 168].

. . . one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts.

*Blue Cross and Blue Shield of Mississippi v. Campbell*, 466 So. 2d 833, 847 (Miss. 1984) (citing *Stubbefield v. Jesco, Inc.*, 464 So. 2d 47, 54 (Miss. 1984); *City of Jackson v. Locklar*, 431 So. 2d 475, 478 (Miss. 1983); *Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652, 657 (Miss. 1975)).

GuideOne's decision to deny the Rocks' claim and rescind the policy is based on all the facts obtained during the course of its investigation as detailed above. There is not one particular fact or incident that led to the denial. Rather, GuideOne made a good faith effort to investigate the claim and considered all the information obtained during its investigation in reaching its decision to deny the claim. The numbers simply do not add up, and the Rocks have pointed to no facts in the record which discount GuideOne's credible and good faith basis for denial of their claim and recession of the policy. Thus, GuideOne's denial of the claim is supported by well-founded, credible evidence obtained during the course of its investigation, all of which is also a part of the record before the Court. Based upon the foregoing, coverage did not exist under the GuideOne policy at the time of the August 27, 2005 fire, and the Rocks' Motion for Summary Judgment should therefore be denied.

C. The undisputed material facts demonstrate all three elements necessary for a circumstantial claim of arson by clear and convincing evidence.

"Under Mississippi law, wilful incendiarism by an insured is a defense to the insurer's liability." *McGory v. Allstate Insurance Co.*, 527 So. 2d 632, 634 (Miss. 1988) (citations omitted). The Court discussed the defense and set forth three elements common to case law in arson cases:

*Arson like adultery is seldom seen, and our law allows that it be proved circumstantially*. Recurrent in the cases are three elements of the circumstantial

claim, to-wit: (1) an incendiary fire; (2) motive of the insured to destroy the property; (3) evidence that the insured had the opportunity to set the fire or to procure its being set by another. *See Davidson v. State Farm Fire & Casualty Co.*, 651 F.Supp. 503, 507 (N.D. Miss. 1986); *Vicksburg Furniture Mfg., Ltd. v. Aetna Cas. and Surety Company*, 625 F.2d 1167, 1171-72 (5th Cir. 1980); *Burress v. Standard Fire Insurance Co.*, 642 F.Supp. 62, 66-67 (N.D. Miss. 1986); and *Gardner v. Wilkinson*, 643 F.2d 1135, 1136 (5th Cir. 1981).

*McGory*, 527 So. 2d at 634-35 (emphasis added); *see also GuideOne Mutual Insurance Co. v. Hall*, 2009 WL 198394, *1 (N.D. Miss. 2009). Each element must be proven by clear and convincing evidence. *McGory* at 636. This Court recently addressed these three elements in the *Hall* case. The Court held that there was clear and convincing evidence in the record as to incendiary cause of the fire and that Hall had both motive and opportunity to set the fire. *Hall* at *4. The Court noted the following facts in evidence which supported the elements of motive:

> Evidence introduced at trial established that Kelly Hall was having trouble with her finances prior to the March 22, 2006, fire. Between October 2005 and March 2006, Hall took out seven loans amounting to $79,800.15, bounced numerous checks, incurred over $1,470 in overdraft fees from BancorpSouth, and acquired a second mortgage on another home on the verge of foreclosure. GuideOne further put on proof of Hall's monetary problems by highlighting her back taxes due and medical bills in collection.

*Id.* at *3. As to the opportunity, one of the facts which the Court relied upon in determining that opportunity did exist was the fact that Hall had removed her pet from the home prior to the fire. *Id.*

Because the Rocks admitted in their memorandum brief that the fire was incendiary in nature, GuideOne does not address that element as it relates to circumstantial proof of arson. As to the second element, the motive of the insured to destroy the property, GuideOne's investigation revealed the financial difficulties which affected the Rocks at the time of the 2005 fire. The financial issues, including the financial strains as well as the inconsistent information provided by the Rocks related to their finances, were discussed in great detail in subsection A, *supra*. From that discussion, and

the supporting documentation in the record, including Hines' Expert Report, it is clear that the Rocks were in a great deal of debt and were living well beyond their means. This point is especially important since Kenneth Rock was scheduled to be tried for felonies in October, 2005.

As was the case in *Hall*, there is substantial, credible evidence in the file that the Rocks were in difficult financial times at the time of the August 2005 fire. Certainly, the evidence in the record rises to the level of and goes well beyond that which this Court found to be clear and convincing proof of motive in *Hall*. In addition to the fact that the Rocks were living beyond their means as is evidenced by Hines' report and had outstanding medical debts such as was the case in *Hall*, there is an additional piece of circumstantial evidence that further supports the Rocks' having a financial motive in the fire. In July of 2000, the Rocks' previous home burned and was a total loss. The Rocks submitted a contents claim of $108,000. Their insurer at the time of the 2000 fire paid $100,00 for the dwelling, $92,000 of which went directly to the lender to satisfy loans on the house, with the Rocks realizing proceeds totaling $80,776.50 from that fire. Even if we are to assume that the Rocks were simply unlucky in 2000, it is clear that the Rocks learned from that experience that it was possible to "earn a profit" from arson.

In their memorandum brief, the Rocks argue that GuideOne did not prove the motive element by clear and convincing evidence, and thus it was not entitled to deny the claim. For this assertion, the Rocks again point to no evidence in the record that would demonstrate they were in no debt or were in a favorable financial condition at the time of the fire, but make the following baseless assessment:

> To suggest that this husband and wife, married for more than fifteen years, raising their children, paying their bills, occasionally struggling with unexpected expenses such as medical bills, sometimes scraping and stretching to make ends meet, but

> doing so, living a modest but comfortable life, burned down their family home, their
> vehicles, their family photographs, their keepsakes, everything they owned in the
> world intentionally, is a grave accusation.

Memorandum brief at 20. Given the combination of facts related to the Rocks' financial woes as

well as their history of a previous house fire loss, there is clear and convincing evidence in the record

to support that the Rocks had a financial motive for arson.

As to the third element, opportunity, the Rocks contend they had no opportunity to set the

fire because they were in Philadelphia, Mississippi at the time of the fire. According to Kenneth

Rock, the Rock family left for Geyser Falls on Friday, August 26, 2005. *Examination Under Oath*

*of Kenneth Rock* at 94. They did not make any hotel reservations. *Id.* at 92-93. It is undisputed that

Kenneth and Janet Rock were accompanied to Philadelphia by their two youngest children, Kenny,

Jr. and Lauren Rock, and that they took with them the family pet. When the Rocks arrived in

Philadelphia, they found a hotel, booked two separate (but connected) rooms, went to Krystal to get

something to eat, and then went to bed. *Deposition of Lauren Rock* at 42. Kenny, Jr. and Lauren

stayed in one room, and Janet and Kenneth stayed in the other connected room. According to

Kenneth Rock, they left all of their cell phones, including Kenneth's, Janet's and Lauren's, in their

vehicle, rather than taking them inside their rooms. *Recorded Statement of Kenneth Rock* at 11.

Lauren testified, however, that she did take her phone in with her but turned it off so that her friends

would not wake her up. *Deposition of Lauren Rock* at 45. The Rocks learned of the fire at

approximately 7:00 a.m. on August 27, 2005, when Kenneth Rock's eldest daughter, Christie Rock

reached the Rocks at their hotel and told them about the fire. Christie did not know the Rocks were

in Philadelphia, but someone had suggested to her they might have traveled there for the weekend.

*Statement of Kenneth Rock* at 10.

In their motion and memorandum brief, the Rocks rely simply upon their sworn testimony that they were in Philadelphia at the time of the fire. In their motion and memorandum brief, they did provide a copy of the hotel receipt from Philadelphia as an exhibit. However, the Rocks provided no additional evidence to substantiate their claim. GuideOne is certainly not bound to give their testimony any significant weight, given the fact that the Rocks have, under oath, been less than honest at every turn. Further, even if we are to believe the Rocks' version of their trip to Philadelphia, Kenneth Rock clearly had every opportunity to leave Philadelphia, return to his home, and set the fire in question.

Further, there is the possibility that someone else set the fire at the Rocks' direction. Given Kenneth Rock's extensive criminal history, it does not stretch one's imagination to believe that Kenneth Rock could have easily procured someone to set the fire in question. Indicators such as the conspicuous absence of the entire family, including the family pet, and leaving the cell phones in the car overnight are further circumstantial evidence of opportunity, and again, the Rocks have done nothing to discount the circumstantial evidence. Then, there is Mike Rock's very obvious absence from the scene of the fire. According to Eley, Chief Williams told him that Mike, Kenneth's brother and immediate next door neighbor, never came outside during the fire to see what was going on. *Deposition of Rick Eley* at 37.

Based upon the foregoing, there is clear and convincing evidence in the record that the fire was incendiary in nature and that the Rocks had both motive and opportunity to set the fire. Therefore, GuideOne was not liable for their insureds', the Rocks' claim, and had a valid reason for denying the same due to arson.

D.  GuideOne is not estopped from denying coverage and rescinding the insurance policy.

Page 16 of 21

GuideOne is entitled to rely upon information supplied within its policy application in determining whether to accept the risk. *Massachusetts Mutual Life Insurance Co. v. Nicholson*, 775 F.Supp. 954, 959 (N.D. Miss. 1991); *Mattox v. Western Fidelity Insurance Co.*, 694 F.Supp. 210, 216 (N.D. Miss. 1998). If the applicant induces an insurer to issue a policy based upon fraudulent representations, the insurer may thus declare the policy void *ab initio*. *Golden Rule Insurance Co. v. Hopkins*, 788 F.Supp. 295, 301 (S.D. Miss. 1991). Intent to defraud is not required where the misrepresentation is material. *State Life Insurance Co. v. O'Brien*, 921 F.Supp. 420, 424 (S.D. Miss. 1995).

During the course of GuideOne's investigation of the Rocks' claim, Kenneth Rock's criminal history came to light; and, through the course of litigation, the extent of his criminal record also surfaced. For the details and extent of Kenneth Rock's criminal history, *see* GuideOne's Motion for Summary Judgment [Doc. 168]. The Rocks were not forthcoming with this information, however, during the course of the application process or the investigation following the fire.

In their memorandum brief, the Rocks do not dispute that Kenneth Rock is now a three-time convicted felon. Nor do they dispute that they signed an application in which they failed to disclose prior felony convictions. They note that, under Mississippi law, an insurer's right to rescind an insurance policy due to material misrepresentations on an insurance application does not exist if an insurance agent takes charge of preparing the application ***and records information inaccurately***. *See e.g., National Life & Accident Insurance Co. v. Miller*, 484 So. 2d 329, 334 (Miss. 1985) (emphasis added). GuideOne does not dispute this to be a correct statement of the law; however, GuideOne denies that such was the situation with the application process in this case.

The Rocks allege in their memorandum brief that Bailey prepared the application based on

her notes and conversations with the Rocks. It is true that Bailey made notes during her initial conversation with Janet Rock and utilized those notes in preparing an initial quote for the Rocks' insurance through GuideOne's online quoting system. *Deposition of Tina Bailey* at 24-25. However, what the Rocks fail to point out is that, prior to finalizing the application, Bailey met with Kenneth and Janet Rock at their home and discussed the application. Specifically, on May 4, 2004, Bailey prepared and printed out the application and drove to the Rocks' home. *Id.* at 105. Bailey presented the application to the Rocks and went over the application with them. *Id.* at 106-07. Further, she specifically recalled reading the questions found on page two of the application out loud to Kenneth and Janet Rock while both Kenneth and Janet were in the room. *Id.* at 109. One of the questions included on page two was "has any household member been convicted of anything other than a traffic violation, or is any lawsuit or litigation pending?"

Bailey made handwritten notations on the application, thereby correcting any pre-filled information that was incorrect based upon information provided to her by the Rocks during that meeting. *Id.* For example, question number two in the general information section on that page requested whether any dogs were kept on the premises. Though Bailey had previously checked "no" as the pre-filled-response, she made a handwritten notation on the application, striking through the "no" and marking "yes," based upon Janet Rock's informing her that they had a dog. *Id.* at 110. There were no changes, however, to the remainder of the application because the Rocks provided no additional information. Bailey gave the corrected, completed application to Kenneth Rock, and Kenneth Rock signed the application. *Id.* at 106.

After learning of Kenneth Rock's conviction during the course of the SIU investigation, Alverio confirmed with Bailey that she had, in fact, asked the Rocks the "felon" question on the

application and had correctly recorded the responses as provided by the Rocks. Tina confirmed that she had asked the Rocks that question. *See Tina Bailey's Recorded Statement* attached as Exhibit 4. Thus, what the Rocks fail to consider in their promissory estoppel argument is that fact that, though Tina Bailey assisted in the application process, she did not *incorrectly* record information as is the required standard in order for GuideOne to be prevented from rescinding the policy based upon a material misrepresentation. Rather, Bailey relied on the information provided by the Rocks, which, under Mississippi law, the insurer is entitled to do.

Based upon the foregoing, the Rocks' failure to provide GuideOne information regarding Kenneth Rock's prior criminal felony conviction rendered the policy void under Mississippi law, and the Rocks' argument as to estoppel is without merit.

### III. CONCLUSION

For the reasons stated herein as well as those outlined in detail in GuideOne's Motion for Summary Judgment, the Rocks' Motion for Summary Judgment should be denied. The clear, undisputed facts in the record support GuideOne's denial of the Rocks' claim and rescission of their policy. Therefore, GuideOne is entitled to summary judgment and respectfully requests that the Court grant the same, finding that coverage does not exist.

Respectfully submitted,

*/s/ Marc D. Amos*
Marc D. Amos, MSB #9557

/s/ *Kristen Wood Williams*

Kristen Wood Williams, MSB #101533
*Attorneys for GuideOne Mutual Insurance
Company and GuideOne America Insurance
Company*

OF COUNSEL:

NICHOLS, CROWELL, GILLIS, COOPER & AMOS, PLLC
Post Office Box 1827
710 Main Street, Third Floor
Columbus, MS  39703-1827
Telephone: (662) 243-7332
Facsimile: (662) 328-6890
Email:  mamos@nicholscrowell.com
          kwilliams@nicholscrowell.com

Tori L. Winfield
1490 West Government Street, Suite 1
Brandon, MS  39042
Telephone: (601) 824-9976
Facsimile: (601) 825-7050
Email: twinfield@guideone.com

## CERTIFICATE OF SERVICE

The undersigned hereby certify that they have electronically filed the foregoing document with the Clerk of the Court using the ECF system, which was sent notification of such filing to counsel who have electronically registered with the Court, and further certify that they have mailed by United States Postal Service, the document to the non-ECF participants. The following is a list of all counsel of record or parties regardless whether electronically notified by the Court or sent via United States Postal Service by this firm:

Mona T. Pittman, Esq.
KELLY LAW FIRM
Post Office Box 1631
Batesville, MS   38606

James R. Frank, Jr., Esq.
WHEELER & FRANKS
Post Office Box 681
Tupelo, MS   38802

This the 4th day of May, 2009.

_/s/ Marc D. Amos_
Marc D. Amos

_/s/ Kristen Wood Williams_
Kristen Wood Williams

W:\AllClients\27006-GuideOne\076-GuideOne v. Kenneth & Janet Rock\Pleadings\GuideOne's Response to Defendants' Motion for Summary Judgment.wpd

Page 21 of 21