**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

GUIDEONE MUTUAL INSURANCE COMPANY
and GUIDEONE AMERICA INSURANCE COMPANY                            PLAINTIFFS

V.                                            CIVIL ACTION NO. 1:06-CV-218-SA-JAD

KENNETH ROCK and JANET ROCK                                         DEFENDANTS

**ORDER**

Before the Court are the Defendants' Motion for Clarification or Reconsideration [233] and the Plaintiffs' Motion to Strike and to Sever [225]. For the reasons stated below, the Court **DENIES** both motions.

**I. Motion for Clarification**

First, the Defendants ask the Court to clarify its decision on the Plaintiffs' Motion for Summary Judgment as to the Defendants' bad faith counterclaim. The Plaintiffs specifically ask whether the Court's decision applied to both the Plaintiffs' denial of the automobile claim and the Plaintiffs' denial of the homeowners claim.

The Fifth Circuit Court of Appeals has recognized that Mississippi law allows for two categories of damages beyond mere contractual damages in a first-party action for breach of an insurance contract: punitive damages, and an intermediate form of extra-contractual damages. Essinger v. Liberty Mut. Fire Ins. Co., 534 F.3d 450, 451 (5th Cir. 2008); see also Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 627-30 (5th Cir. 2008).[1]

---

[1]Professor Jackson has summarized the state of the law:

[T]here are three types of cases in which the insured may recover. In one type, the insured can prove a breach of the insurance contract but cannot prove the insurer lacked an arguable reason for its actions. In those cases, the insured is

Punitive damages are available in cases where the insurer 1) had no arguable basis for denying the claim and (2) the insurer's conduct evinced malice or gross negligence in disregard of the insured's rights. Broussard, 523 F.3d at 628.² An insured may also recover punitive damages in spite of an insurer's arguable basis for denial, if the insurer's behavior in writing the policy or handling the claim "breaches an implied covenant of good faith and fair dealing and rises to the level of an independent tort." Id. (citations omitted).

Upon review of the parties' summary judgment evidence, this Court held 1) that "Plaintiffs had arguable reason to deny the Defendants' claim," 2) that "Plaintiffs' reasons for denying payment are based on valid provisions of the policies at issue and are not the sort of tortious conduct necessary to support a claim of bad faith," and 3) that "Defendants have presented no evidence of any actions or inactions on the part of the Plaintiffs that approach the level of conscious wrongdoing, dishonest purpose, willful wrong, malice, or reckless disregard of an insured's rights necessary to support a claim of bad faith." Guideone Mut. Ins. Co. v. Rock, 2009 U.S. Dist. LEXIS 54717, *23-*24 (N.D. Miss. June 29, 2009).

To the extent that the Court's earlier opinion was unclear, the Court now clarifies that upon consideration of the parties' summary judgment evidence and the applicable law, the Court finds that

---

limited to ordinary contract remedies. In a second type of case. . . the insured can prove the insurer lacked an arguable reason for denying the claim but cannot prove the insurer's conduct was sufficiently egregious to give rise to punitive damages. Finally, in a third type of case . . . the insured can prove not only that the insurer had no arguable reason to deny the claim, but also that the insurer's conduct is sufficiently egregious to warrant imposition of punitive damages.

Jeffrey Jackson, Mississippi Insurance Law & Practice § 13:21 (2009).

²See also Jeffrey Jackson, Mississippi Insurance Law & Practice § 13:2 (2009).

2

1) the Plaintiffs had a reasonably arguable basis for denying the Defendants' homeowners insurance claim and automobile insurance claim and 2) Defendants have presented no evidence of any action or inaction on the part of the Plaintiffs that constitutes a breach of an implied covenant of good faith and fair dealing, or rises to the level of an independent tort or gross negligence.[3]  Therefore, a jury's consideration of punitive damages would be inappropriate in this case.  See Essinger v. Liberty Mut. Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008); Jones v. Reynolds, 2008 U.S. Dist. LEXIS 40120, *22-*23 (N.D. Miss. May 16, 2008) (citing Weems v. American Sec. Ins. Co., 486 So. 2d 1222, 1226-27 (Miss. 1986)); Caldwell v. Alpha Ins. Co., 686 So. 2d 1092, 1095-96 (Miss. 1996).

However, a lesser measure of consequential damages - damages beyond the mere proceeds of the contract - may be available to an insured even if punitive damages are not.  Essinger, 534 F.3d at 451 (citing Universal Life Ins. Co. v. Veasley, 610 So. 2d 290, 295 (Miss. 1992)).[4]  However, even this intermediate level of extra-contractual damages is unavailable if the decision to deny the claim has "a reasonably arguable basis."  Broussard, 523 F.3d at 628 (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1186 n. 13 (Miss. 1990); Sw. Miss. Reg'l Med. Ctr. v. Lawrence, 684 So. 2d 1257, 1267-69 (Miss. 1996)).  As the Court has ruled that the Plaintiffs had

---

[3]"In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." Guideone Ins. Co. v. Bridges, 2009 U.S. Dist. LEXIS 16035, *4 (S.D. Miss. Mar. 2, 2009) (citing Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc., 759 So. 2d 1203, 1215 (Miss. 2000)).

[4]See also Jeffrey Jackson, Mississippi Insurance Law & Practice § 13:21 (2009); Guideone Ins. Co. v. Bridges, 2009 U.S. Dist. LEXIS 19947, *2-*3 (S.D. Miss. Mar. 12, 2009) (noting that Veasley's holding has been limited to extraordinary fact patterns and its application should be limited) (citing Willard v. Paracelsus Health Care Corp., 681 So. 2d 539, 545 (Miss. 1996)).

a reasonably arguable basis for their denial of the Defendants' claim, consideration of damages for anxiety, emotional distress, expenses of litigation, attorneys fees,[5] and other extra-contractual damages that might be reasonably foreseeable consequences of failure to pay a valid claim would likewise be inappropriate in this case.

Therefore, in an attempt to narrow the issues for trial to those that are relevant to the factual and legal issues remaining in this case, the Court clarifies its earlier opinion: the Court granted summary judgment for the Plaintiffs as to any claims for punitive damages and/or extra-contractual damages asserted by the Defendants. The only legal issue remaining in this case is whether the claims made by the Defendants are covered under the policies, or, phrased differently, whether the Defendants are entitled to the contractual benefit of payment under the policies.

## II. Motion for Reconsideration

The Defendants also ask the Court to reconsider its decision to grant the Plaintiffs' Motion for Summary Judgment as to the Defendants' bad faith counterclaim. First, the Defendants argue that reasonable minds could differ as to whether the Plaintiffs had an arguable basis for denial of either the homeowners claim or the automobile claim. Second, the Defendants argue that reasonable minds could differ as to whether the Plaintiffs' actions constituted a willful or malicious wrong, or gross or reckless disregard for the Defendants' rights.

A.      *Motion for Reconsideration Standard*

The Federal Rules of Civil Procedure do not specifically provide for a motion for

---

[5]"Absent statutory or contractual provisions, attorneys' fees are not generally recoverable unless punitive damages are proper." Miss. Power Co. v. Hanson, 905 So. 2d 547, 552 (Miss. 2005); see also Greer v. Burkhardt, 58 F.3d 1070, 1074 (5th Cir. 1995) (attorneys' fees generally unrecoverable absent an award of punitive damages, unless insurer lacked an arguable basis for denial).

4

reconsideration, but the Fifth Circuit Court of Appeals has held that a district court may entertain such a motion and treat it as a motion to alter or amend under Rule 59(e) or as a motion for relief from judgment under Rule 60(b).  Ellis v. Miss. Dep't of Health, 2009 U.S. Dist. LEXIS 11441, *2 (N.D. Miss. Feb. 5, 2009); Williamson Pounders Architects, P.C. v. Tunica County, 2008 U.S. Dist. LEXIS 55145, *2 (N.D. Miss. July 21, 2008) (citing Teal v. Eagle Fleet, Inc., 933 F.2d 341, 347 (5th Cir. 1991)).  "If the motion for reconsideration is filed and served within ten days of the rendition of judgment, the motion falls under Rule 59(e).  If it is filed and served after that time, it falls under the more stringent Rule 60(b)."  Williamson Pounders Architects, P.C., 2008 U.S. Dist. LEXIS 55145 at *2.

This Court entered an Order on the parties' motions for summary judgment on June 29, 2009. The Defendants filed their Motion for Reconsideration on July 7, 2009, within ten days of the Order. See FED. R. CIV. P. 6.  Therefore, the Court will apply the standard applicable to motions under Rule 59(e).

Federal Rule of Civil Procedure 59(e) grants the Court the power to alter or amend its judgment.  FED. R. CIV. P. 59(e).  "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  Ellis, 2009 U.S. Dist. LEXIS 11441 at *4 (citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). There are three potential grounds for the Court to alter or amend a judgment under Rule 59(e): "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." Williamson Pounders Architects, P.C. v. Tunica County, 2008 U.S. Dist. LEXIS 87680, *4 (N.D. Miss. Oct. 29, 2008).

This Court has considerable discretion in deciding whether to grant a motion for reconsideration. Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993). Granting a motion for reconsideration, however, is "an extraordinary remedy and should be used sparingly." In re Pequeno, 240 Fed. Appx. 634, 636 (5th Cir. 2007) (citations omitted). A motion for reconsideration under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." Ellis, 2009 U.S. Dist. LEXIS 11441 at *3 (citing Rosenzweig v. Azurix Corp., 332 F.3d 854, 863 (5th Cir. 2003)); Nationalist Movement v. Town of Jena, 2009 U.S. App. LEXIS 6833, *11 (5th Cir. Apr. 1, 2009) ("Motions for reconsideration should not be used to raise arguments that could have been made before the entry of judgment or to re-urge matters that have already been advanced by a party.") (citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)).

### B. *Arguable Basis for Denial*

The Defendants initially argue that because the Court found that there remained genuine issues of material fact as to the question of coverage under each policy, it must therefore follow that reasonable minds could differ as to whether the Plaintiffs had an arguable basis for denial. The Defendants express neither an intervening change in controlling law on this issue, nor the availability of new evidence not previously available. Therefore, the Court assumes that they request that the Court reconsider its decision in order to correct a clear error of law or to prevent manifest injustice. Williamson Pounders Architects, P.C., 2008 U.S. Dist. LEXIS 87680 at *4.

The Defendants argue that the presence of factual disputes that are relevant to the legal question of coverage necessarily means that there was no arguable reason for denial. This proposition finds no support in Mississippi law. "An arguable basis is a reason sufficiently

6

supported by credible evidence as to lead a reasonable insurer to deny the claim." Sobley v. S. Natural Gas Co., 302 F.3d 325, 342 (5th Cir. 2002) (citing State Farm Mut. Auto.Ins. Co. v. Grimes, 722 So. 2d 637, 642 (Miss. 1998)). An exclusion or defense may constitute an arguable basis even if it does not ultimately bar coverage. Id. at 341. Therefore, the existence of genuine issues of material fact as to the legal question of coverage has no bearing on the issue of whether the Plaintiffs had an arguable basis for denial.

Even if the factual issues as to coverage are ultimately resolved in favor of the Defendants, the Plaintiffs have nonetheless presented arguable basis for denial. Moreover, the Court has already addressed this issue in its Memorandum Opinion [222] on the parties' Motions for Summary Judgment, and "[m]otions for reconsideration should not be used to raise arguments that could have been made before the entry of judgment or to re-urge matters that have already been advanced by a party." Nationalist Movement, 2009 U.S. App. LEXIS 6833 at *11; see also Knight v. Kellogg Brown & Root Inc., 2009 U.S. App. LEXIS 11314, *20 (5th Cir. May 27, 2009) (Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment") (citing Templet v. HydroChem Inc., 367 F.3d 473, 478-79 (5th Cir. 2004)).

## C. *Behavior Constituting an Independent Tort*

The Defendants also ask the Court to reconsider its grant of summary judgment as to their bad faith counterclaim, arguing that the Plaintiffs' engaged in behavior sufficient to constitute an independent tort, conduct evincing malice or gross negligence in disregard of the Defendants' rights. The Defendants express neither an intervening change in controlling law on this point, nor the availability of new evidence not previously available. Therefore, the Court assumes that they

7

request that the Court reconsider this point to correct a clear error of law or to prevent manifest injustice. Williamson Pounders Architects, P.C., 2008 U.S. Dist. LEXIS 87680 at *4.

*1. Failure to Produce Preliminary Report*

First, the Defendants argue that an alleged discovery violation and other alleged actions by Plaintiffs associated therewith were committed with willful and malicious intent, gross negligence, or reckless disregard for the Defendants' rights. The Defendants deposed the Plaintiffs' origin and cause expert, Rick Eley, on March 24, 2009. During that deposition, Mr. Eley testified that he had not formed any opinions other than those contained within the "Full Report" he provided to Plaintiffs, dated September 30, 2005. The "Full Report" states that the fire began "in the living area near the rear French doors." The report references a "melted aluminum door threshold at the right side French doors." A diagram included with the report indicates that the area to which the report refers was on the back side of the living area, adjacent to the entrance to the kitchen. Mr. Eley clarified by way of deposition testimony that there were two sets of doors at the back of the living room, and the ones he referenced in his report as indicating the point of origin of the fire were the doors on the right (if one is facing the back of the house).

During the deposition, it came to the Defendants' attention that Mr. Eley had provided the Plaintiffs with a "Preliminary Report." Defendants' counsel stated that she had not received a copy of a "Preliminary Report," and Plaintiffs' counsel responded that he believed it had been produced. Defendants' counsel acknowledged that it could have been lost when materials were transferred from Defendants' previous counsel to her, but that, regardless, she did not have a copy of it. Plaintiffs' counsel agreed to provide a copy of the "Preliminary Report" and agreed that they could reconvene if Defendants had any questions about it.

8

The "Preliminary Report" is dated September 2, 2005. It states that Eley was asked to conduct an origin and cause investigation into the fire, and that he commenced said investigation on August 31, 2005. The "Preliminary Report" further states that the fire "originated in and around the kitchen area," and that Eley collected two samples of debris for chemical analysis. He advised that a complete report would follow.

At the second deposition of Mr. Eley, he denied that the "Preliminary Report" contained a different opinion as to the fire's place of origin than the "Full Report" did. He testified that the kitchen area and living area were adjacent to one another, and that the melted threshold referenced in his "Full Report" was ten or fifteen feet from the kitchen. He further stated that he never goes into detail in a "Preliminary Report."

Defendants argue that the above facts create a question of fact for a jury as to the issue of bad faith. Specifically, they argue that a jury could find that Plaintiffs' alleged failure to produce the document in question was willful, malicious, grossly negligent, and displayed reckless disregard for the Defendants' rights because of the fact that it contains "substantially different" opinions than the "Full Report" does.

"Evidence of an insurer's post-denial conduct can be relevant to a claim for bad faith denial of insurance coverage." Tipton v. Nationwide Mut. Fire Ins. Co., 381 F. Supp. 2d 572, 580 (S.D. Miss. 2004) (citing Sobley, 302 F.3d at 335); see also Gregory v. Continental Ins. Co., 575 So. 2d 534, 541 (Miss. 1990). However, the Defendants have not presented any evidence to support their argument that the Plaintiffs intentionally "withheld" the document in question, much less that the alleged failure to produce it constitutes evidence of malice, reckless disregard for the Defendants' rights, a breach of an implied covenant of good faith and fair dealing, gross negligence, or any other

9

behavior that would constitute an intentional tort.

During the initial deposition of Mr. Eley, Defendants' counsel admitted that the preliminary report could have been lost in the transition from Defendants' previous counsel to their present counsel: "Obviously with the transfer of lawyers there may have been something lost, but I do not have a copy of a preliminary report." Further, Defendants have produced no evidence that the "Preliminary Report" was not promptly produced once requested by Defendants' current counsel at the initial deposition of Mr. Eley.

Defendants make much of the differences between the "Preliminary Report" and the "Full Report." The "Preliminary Report" states that the fire began "in or around the kitchen area," whereas the "Full Report" states that it began "in the living area near the rear French doors." Defendants describe this as a "substantially different" opinion. The evidence in the record provides no support for such a distinction. The diagram included with Eley's "Full Report" indicates that the area of origin was indeed "in or around the kitchen," and he testified at the second deposition that the melted threshold was ten or fifteen feet from the kitchen. The evidence in the record indicates nothing more than that the "Preliminary Report" was merely an incomplete and less precise version of the "Full Report," intended merely to update the Plaintiffs as to the progress of the investigation.

Submitting the Defendants' bad faith claim to the jury solely on the basis of Defendants' alleged discovery violation would be "a disproportionate sanction." Tipton, 381 F. Supp. 2d at 580; see also Sobley, 302 F.3d at 341 (alleged discovery violations were not evidence of gross and reckless disregard for an insured's rights sufficient to create a jury question as to bad faith). As such, the Defendants' Motion for Reconsideration is denied as to this issue.

### 2. *Material Misrepresentation by Agent*

Defendants also argue that the issue of extra-contractual and punitive damages may be submitted to the jury because the Plaintiffs' agent made "material misrepresentations" on the application.

The Mississippi Supreme Court has stated, "in cases where the agent takes charge of the application or suggests the answers to the questions, the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him." McCann v. Gulf Nat'l Life Ins. Co., 574 So. 2d 654, 657 (Miss. 1990) (citing Nat'l Life & Accident Ins. Co. v. Miller, 484 So. 2d 329, 334 (Miss. 1985)). The Court continued:

> Moreover, where the agent is guilty of misrepresentation, the question of punitive damages is one for the jury because a jury might justifiably find that the agent's actions were so willful or of such gross negligence as to evidence a reckless disregard for the rights of the insured.

Id. The Court explained that the agent's knowledge of the offending information and failure to communicate that information to the insurance company justified the imposition of punitive damages. Id.

The Court reached a similar conclusion in Andrew Jackson Life Ins. Co. v. Williams. In that case, the insured contended that he had disclosed a pre-existing medical condition to the insurer's agent, who misrepresented the disclosed condition to the company. Andrew Jackson Life Ins. Co., 566 So. 2d at 1187. The Court held that there was sufficient evidence to submit the issue of punitive damages to the jury, based on the agent's egregious mishandling of the application. Id.

Also, in Lewis v. Equity Nat'l Life Ins. Co., 637 So. 2d 183 (Miss. 1994), an insured alleged that she had disclosed prior heart problems to an insurer's agent, and that she had provided the names of her treating physicians. Id. at 184. The agent, however, told the insurer that she had not

11

disclosed any prior heart problems.  Id.  The Court held that the issue of punitive damages should have been submitted to the jury because the agent misrepresented information that the claimant had disclosed to him.  Id. at 186.

However, there is a key difference between the cases cited above and the case *sub judice*. In the present case, the Defendants do not contend that they disclosed Kenneth Rock's criminal history to the Plaintiffs' agent, who then misrepresented their accurate answer to the insurer. Rather, Defendants contend that the Plaintiffs' agent *never asked* the criminal history question. Defendant Kenneth Rock testified, by way of affidavit, "Tina Bailey never asked me any questions about my prior criminal convictions." Defendant Janet Rock testified, by way of affidavit, "At no time during my telephone conversation with Ms. Bailey did she ever ask me if any member of my family had been convicted of a crime - or any similar question." As for the other alleged misrepresentations Bailey made on the application, none of them formed the basis of the Plaintiffs' denial, and, for that reason, the above cases are inapplicable.

The Defendants have presented no evidence that the Plaintiffs' agent intentionally misrepresented accurate information that they disclosed to her regarding Kenneth Rock's criminal history.  In fact, they have unequivocally stated that the agent never asked them about criminal history.  As such, the facts of this case remove it from the line of cases in which the Mississippi Supreme Court has permitted the issue of punitive damages to go to the jury based on an material misrepresentation by an agent.  For the above reasons, the Defendants' Motion for Reconsideration is denied as to this issue.

The Court further notes that the argument and evidence on this point included in Defendants' Motion for Reconsideration have already been presented to the Court in the Defendants' briefing

on the motions for summary judgment, and the argument and evidence included in Defendants' supplement to their Motion for Reconsideration could have been presented to the Court in Defendants' briefing on the motions for summary judgment. A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." Knight, 2009 U.S. App. LEXIS 11314 at *20.

> 3. *Delay in Processing Claim*

Defendants argue that the evidence in the record is clear that the Plaintiffs improperly delayed processing their insurance claims. The only evidence they cite in support of this argument is testimony from their expert, Tom Gober. Defendants' counsel asked Mr. Gober whether the period of time between the Defendants' loss and the Plaintiffs' denial (August 27, 2005, to July 31, 2006) constituted improper delay on the part of the Plaintiffs. Mr. Gober responded, "The time, in and of itself, is not enough for me to criticize." He elaborated:

> It is the fact that at the end of that time, based on what I have seen, there was not accumulated adequate evidence to support denying the claim. So any length of time, certainly up to that moment when they decided not to pay the claim, when I look and see what they did base it upon, it - - taken with the time that lapsed, it appears onerous to me.
> . . .
> If at the end of that time period, the exact same time period, they had decided, you know what, we investigated this, and based upon what we found, we should pay this, we apologize for the delay, but we needed to investigate, my answer would be different. The time - that much time passing, only to end in a denial, is bad, and those kinds of activities by insurance companies tend to be punished.

Mr. Gober's opinion was not that the claim was improperly delayed. In fact, he explicitly stated that if the same amount of time had passed and the Plaintiffs not denied the claim, the time taken to reach the decision would not be an element of his opinion. Under Mr. Gober's reasoning, therefore, any alleged impropriety with respect to the time taken to reach the decision to deny was the result of the

13

denial, rather than the time taken to reach a decision.

The substance of Mr. Gober's opinion is that there was insufficient basis for denial of the claim, rather than that the time taken to reach the decision was improper or unreasonable. Defendants have presented no further evidence as to the issue of improper delay. As such, their Motion for Reconsideration is denied as to this issue.

4. *Post-Claim Underwriting*

A motion for reconsideration under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." Ellis, 2009 U.S. Dist. LEXIS 11441 at *3 (citing Rosenzweig, 332 F.3d at 863); see also Knight, 2009 U.S. App. LEXIS 11314 at *20; Nationalist Movement, 2009 U.S. App. LEXIS 6833 at *11. The Defendants did not raise the issue of post-claim underwriting in their briefing on the motions for summary judgment. Indeed, they have not raised it at any other point in these proceedings. Therefore, they may not raise it now.[6]

Therefore, for the reasons stated above, the Defendants' Motion for Reconsideration [237] is **DENIED** as to each and every issue raised therein.

### III. Plaintiffs' Motion to Strike and to Sever

On July 31, 2006, the Plaintiffs initiated this action by filing their Complaint for Declaratory

---

[6]The Court declines to consider the issue of post-claim underwriting. However, the Court notes the Defendants post-claim underwriting argument is based on the Plaintiffs' investigation of the accuracy of the answers to the questions on the application after a claim had been filed. "To deny [an insurer] the right to engage in post claim investigation would mean that insurers would have to investigate every answer by every applicant before insuring them and to pay claims regardless of the misrepresentations contained in the application." Wesley v. Union Nat'l Life, 919 F. Supp. 232, 235 n. 3 (S.D. Miss. 1995). However, under Mississippi law, an insurer "has the right to rely on the information supplied in the application in determining whether or not to accept the risk." Mattox v. W. Fid. Ins. Co., 694 F. Supp. 210, 216 (N.D. Miss. 1988) (citing Apperson v. United States Fid. & Guar. Co., 318 F.2d 438, 441 (5th Cir. 1963)).

Judgment. The Defendants asserted counterclaims in their Answer and demanded a jury trial.

The Declaratory Judgment Act confers on federal courts the discretion to declare the rights of litigants. Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) (citing 28 U.S.C. § 2201(a) (1988 ed., Supp. V)). However, "if there would have been a right to a jury trial on [an] issue if it had arisen in an action other than one for a declaratory judgment, it must be tried to a jury in the declaratory action." 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2313 (3d ed. 2009). "[W]here the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is 'very narrowly limited and must, wherever possible, be exercised to preserve jury trial.' " Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 490 (5th Cir. 1961) (citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)).[7]

Further, "an action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity."

---

[7] The Plaintiffs' dependence on Katchen v. Landy, 382 U.S. 323, 86 S. Ct. 67, 15 L. Ed. 2d 391 (1966), as a counter to the Beacon Theatres opinion is unfounded. Katchen involved a "specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." Katchen, 382 U.S. at 339, 86 S. Ct. 67.
   Further, Royal Aviation, Inc. v. Aetna Cas. & Surety Co., 770 F.2d 1298 (5th Cir. 1985), is inapplicable. The Fifth Circuit Court of Appeals cited Professors Wright and Miller: "If issues are common to the claim for reformation and the claim for recovery on the contract these are for the jury." Id. at 1302 (citing 9 C. Wright & A. Miller, Federal Practice and Procedure § 2316 at 82-83 (1971)). The Court explained that a jury would have decided no issue in the legal claims that would be in common with the equitable claim; therefore, there was no right to a jury trial on the equitable claim. Id. Plaintiffs' equitable claim involves many issues of fact in common with the Defendants' legal claim.
   Enserch Corp. v. Shand Morahan & Co., 952 F.2d 1485 (5th Cir. 1992), is likewise inapplicable, for the same reasons as Royal Aviation.

KLLM, Inc. Employee Health Prot. Plan v. Ontario Cmty. Hosp., 947 F. Supp. 262, 266 (S.D. Miss. 1996). "The propriety of a bench trial is to be judged according to (1) the customary manner of trying such a cause before the merger of law and equity, (2) the type of remedy sought, and (3) the practical abilities and limitations of juries." Terrell v. De Conna, 877 F.2d 1267, 1273 (5th Cir. 1989) (citing Ross v. Bernherd, 396 U.S. 531, 538 n. 10, 90 S. Ct. 733, 24 L. Ed. 2d 729 (1970)). Therefore, the Court must look to Mississippi law to determine the nature of the underlying dispute. Id.

The counterclaims asserted by the Defendants are clearly legal in nature. Burnette v. Hartford Underwriters Ins. Co., 770 So. 2d 948 (Miss. 2000) (case in which plaintiffs alleged breach of contract in bad faith and sought declaratory relief, and actual and punitive damages was legal in nature); Southern Leisure Homes, Inc. v. Hardin, 742 So. 2d 1088 (Miss. 1999) (case in which plaintiffs alleged breach of contract, negligence, and fraud and sought actual and punitive damages was legal in nature). Further, the question of coverage in the case *sub judice* depends upon the decision of issues of disputed fact that are questions for the jury under Mississippi law. See McGory v. Allstate Ins. Co., 527 So. 2d 632 (Miss. 1998) (arson defense to breach of contract claim was properly submitted to jury, albeit with an erroneous instruction); Sanford v. Federated Guar. Ins. Co., 522 So. 2d 214, 217-18 (Miss. 1988) (materiality of misrepresentation on application was a question for the jury); Simpson, 477 So.2d at 254 ("issue of awarding contractual damages under the provisions of the policy was probably for the jury's determination").

The Court further notes that the Plaintiffs' concerns about potential confusion of the jury by presentation of issues unrelated to coverage are moot, insofar as the Court has granted summary judgment as to the Defendants' counterclaims of fraudulent inducement and bad faith.

16

Therefore, the Plaintiffs' Motion to Strike and to Sever [225] is **DENIED**. The Court's decision on this issue does not constitute an opinion as to which specific elements of the Defendants' counterclaims and the Plaintiffs' defenses thereto are questions of law for the court or questions of fact for the jury, and the parties are not to construe it as such.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion for Reconsideration [233] is **DENIED**, and the Plaintiffs' Motion to Strike and Sever [225] is **DENIED**.

So ordered on this the 28th day of July, 2009.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**